IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GLORIA GUERRA, IRMA GUZMAN, | § | |
| MARIA HERNANDEZ, MARIA MUZQUIZ, | § | |
| LEO PARRAS, HELEN RIVERA, | § | |
| ADRIANA RODRIGUEZ, JAIME SANCHEZ, | § | |
| BLANCA SEPULVEDA, and ARACELI SOTO | § | |
| | § | |
| Plaintiffs, | § | **CIVIL ACTION NO. B-05-077** |
| | § | |
| v. | § | |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | **JURY DEMAND** |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and
OBJECTIONS TO DEFENDANT'S SUMMARY JUDGMENT EVIDENCE**

TEXAS STATE TEACHERS ASSOCIATION
OFFICE OF THE GENERAL COUNSEL

By: _____

Kevin F. Lungwitz
Attorney-in-charge
State Bar No. 12698790
Southern Dist. No. 20529
316 West 12th Street
Austin, Texas 78701
512.476.5355, ext. 1145
512.486.7045 (fax)


Joey W. Moore
Of counsel
State Bar No. 24027523
Southern District No. 324957
316 West 12th Street
Austin, Texas 78701
512.476.5355, ext. 1145
512.486.7045 (fax)

ATTORNEYS FOR PLAINTIFFS

# I.  TABLE OF CONTENTS

<u>Page</u>

I.  TABLE OF CONTENTS.................................................................................. ii

II.  TABLE OF CITATIONS .............................................................................. iv

III.  INTRODUCTION   ....................................................................................1

IV.  NATURE AND STATE OF THE PROCEEDING ..................................................2

V.  STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT.................3

    1.  Has Defendant established the absence of all genuine issues of material fact and each element of its affirmative defense that Plaintiffs are exempt employees under the Fair Labor Standards Act pursuant to the executive exemption?...........................................................................................3

    2.  Is the evidence provided by Defendant in the form of documentation and affidavits competent summary judgment proof? .............................................3

VI.  STATEMENT OF GENUINE ISSUES OF MATERIAL FACT............................4

VII.  SUMMARY OF THE ARGUMENT ....................................................................9

VIII.  ARGUMENT AND AUTHORITIES................................................................10

    A.  The determination of whether an employee is exempt from the overtime pay requirements of the FLSA is primarily and initially a question of fact for the Court...................................................................10

    B.  There are genuine issues of material fact of whether Plaintiffs are salaried employees as defined by the Act.  .............................................13

    C.  Defendant's "Window of Corrections" argument is not applicable to matter. ..........................................................................................16

    D.  There are genuine issues of material fact of whether Plaintiffs' primary duties are those of managing Defendant's enterprise..................17

    E.  There is a genuine issue of material fact as to whether Plaintiffs' suggestions and recommendations as to the hiring, firing,

advancement, promotion, or other change of status of other employees is given particular weight...................................................................20

IX.   OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE AND MOTION TO STRIKE DEFENDANTS'SUMMARY JUDGMENT EVIDENCE...................................................................23

   **A.**   Attached documentation. ...................................................................23
   **B.**   Affidavits   ...................................................................24
      1.   Affidavit of Judy Cuellar ...................................................................24
      2.   Affidavit of Mary Garza ...................................................................27
      3.   Affidavit of Terry Mendez...................................................................28

X.    PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE...................................................................29

XI.   CONCLUSION AND PRAYER ...................................................................29

XII.  CERTIFICATE OF SERVICE ...................................................................31

## APPENDICES

Exhibit A:      Affidavit of Gloria Guerra

Exhibit B:      Affidavit of Araceli Soto

Exhibit C:      Affidavit of Maria Hernandez

Exhibit D:      Affidavit of Maria Muzquiz

Exhibit E:      Affidavit of Leo Parras

Exhibit F:      Affidavit of Adriana Rodriguez

Exhibit G:      Affidavit of Blanca Sepulveda

Exhibit G-1:    Notice of Warning Issued to Blanca Sepulveda

Exhibit H:      Deposition excerpts from deposition of Irma Guzman

Exhibit I:      Deposition excerpts from deposition of Dora Rivas

Exhibit J:      Deposition excerpts from Terry Mendez

## II. TABLE OF CITATIONS

Page

Federal Statutes

29 C.F.R. §541.100(a)(1)-(4) ................................................................10,18,20
29 C.F.R. §541.102 ...........................................................................................18
29 C.F.R. §541.105 ...........................................................................................20
29 C.F.R. §541.117-541.118 ............................................................................13
29 C.F.R. §541.118 ...........................................................................................16
29 C.F.R. §541.118(a) .......................................................................................13
29 C.F.R. §541.118(a)(2) ..................................................................................14
29 C.F.R. §541.5d ..............................................................................................14


Fair Labor Standards Act

29 U.S.C. Section 201, et seq................................1,2,6,10,11,12,13,14,15,18
29 U.S.C. Section 213(a)(1)..............................................................................10

Federal Rules of Civil Procedure

56(c) ......................................................................................................................3
56(e) ....................................................................................................................24
56..........................................................................................................................12

Federal Rules of Evidence

801 .......................................................................................................................24
901(b)(1) .............................................................................................................23
902 (11), (12) .....................................................................................................24


Federal Caselaw

Anderson v. Liberty Lobby, Inc.,
    477 U.s. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ....................3
Auer v. Robbins,
    519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997)..............13,17
Bank of Illinois v. Allied Signal Safety Restraint Sys.,
    75 F.3d 1162, 1168-69 (7th Cir. 1996) .................................................28
Barrentine v. Arkansas-Best Freight Sys.,
    450 U.S. 738, 743 (1981)........................................................................12
Cowart v. Ingalls Shipbuilding, Inc.,
    213 F.3d 261, 262-263 (5th Cir. 2000) .................................................10
Dalheim v. KDFW-TX,
    918 F.2d 1220, 1224 (5th Cir. 1990) .........................................10,11,12
Demos v. City of Indianapolis,
    302 F.3d 698 (7th Cir. 2002) ............................................................14,15
Hibernia Nat'l Bank v. Carner,

997 F.2d 94, 97 (5th Cir. 1993) ..............................................................3

Icicle Seafoods, Inc. v. Worthington,
475 U.S. 709, 714 (1986)..................................................................12

Lott v. Howard Wilson Chrysler-Plymouth, Inc.,
203 F.3d 326, 330-31 (5th Cir. 2000) .........................................11,12

Lujan v. National Wildlife Fed'n,
497 U.S. 871, 888 (1990)..................................................................24

Marshall v. East Carroll Parish Hosp. Serv. Dist.,
134 F.3d 319, 324 (5th Cir. 1998) ...................................................24

Moore v. Hannon Food Servs., Inc.
317 F.3d 489 (5th Cir. 2003) ..........................................................17

Spradling v. City of Tulsa, Oklahoma,
95 F.3d 1492, 1499-1500 (10th Cir. 1996) .....................................15

Visser v. Packer Eng'g Assocs.,
924 F.2d 655, 659 (7th Cir. 1991) ...................................................24

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GLORIA GUERRA, IRMA GUZMAN,        §
MARIA HERNANDEZ, MARIA MUZQUIZ,    §
LEO PARRAS, HELEN RIVERA,          §
ADRIANA RODRIGUEZ, JAIME SANCHEZ,  §
BLANCA SEPULVEDA, and ARACELI SOTO §
                                   §
    Plaintiffs,                    §      CIVIL ACTION NO. B-05-077
                                   §
v.                                 §
                                   §
BROWNSVILLE INDEPENDENT            §
SCHOOL DISTRICT,                   §      JURY DEMAND
                                   §
    Defendant.                     §

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and OBJECTIONS TO DEFENDANT'S SUMMARY JUDGMENT EVIDENCE

TO THE HONORABLE HILDA G. TAGLE:

    COME NOW, PLAINTIFFS, Gloria Guerra, Irma Guzman, Maria Hernandez, Maria Muzquiz, Leo Parras, Adriana Rodriguez, Blanca Sepulveda, and Araceli Soto, and file their Response to Defendant Brownsville Independent School District's Motion for Summary Judgment, Objections to Defendant's Summary Judgment Evidence, and Motion to Strike Defendant's Summary Judgment Evidence. Plaintiffs would respectfully show the Court the following:

## III.
### Introduction

    Plaintiffs are cafeteria "managers" employed by the District. The district cafeteria managers and the coordinator for microcomputers are the only classified (non-professional) employees at the District who are considered exempt from the FLSA overtime provisions by the

District.  (P. Ex. J, Deposition excerpt from deposition of Terry Mendez, p. 13, lines 4-7).  All Plaintiffs have been employed by the District for at least five years, and several of the Plaintiffs have been employed by the District between ten and twenty years.  (P. Ex. A-G, ¶ 2).  Plaintiffs are the managers of eight campus cafeterias.  One hundred per cent of the students fed in Plaintiffs' cafeterias receive a free school lunch. (P. Ex. J, p. 21, lines 23-24; P. 22, lines 24-25, P. 23, line 1). The cafeterias where Plaintiffs are assigned prepare hundreds of breakfast meals and lunch meals every day.  (D. Ex. C, p. 1).

The District contends that Plaintiffs, and cafeteria managers in general, are exempt employees who are not entitled to the overtime protections of the Fair Labor Standards Act. (Defendant's Motion for Summary Judgment, ¶ 1).  Plaintiffs have regularly worked many hours in excess of forty per week, attending to such duties as attending managers' meetings, attending summer workshops and trainings, preparing work schedules, handling administrative paperwork at school and at home, preparing recipes, opening the cafeterias before or after hours for certain school functions, and catering Board of Trustee meetings and other BISD functions.  Rather than compensate Plaintiffs with overtime compensation at time and one-half their regular rate of pay, BISD does not pay them *any* compensation for these extra duties.

## IV.
## Nature and State of the Proceeding

This case, filed by Plaintiffs on March 15, 2005, is an action against Defendant Brownsville Independent School District ("the District") for violations of the Fair Labor Standards Act. 29 U.S.C. Section 201 *et seq.*

Written and oral discovery was completed on June 30, 2006.  The parties participated in mediation on July 12, 2006.  The case was not resolved in mediation.   Defendant filed its

Motion for Summary Judgment and Motion for Leave on July 26, 2006.   Plaintiffs now file their Response to Defendant's Motion for Summary Judgment, Objections to Defendant's Summary Judgment Evidence, and Motion to Strike Defendant's Summary Judgment Evidence.

## V.
### Statement of Issues To Be Ruled Upon by the Court

1.   Has Defendant established the absence of all genuine issues of material fact and each element of its affirmative defense that Plaintiffs are exempt employees under the Fair Labor Standards Act pursuant to the executive exemption?

2.   Is the evidence provided by Defendant in the form of documentation and affidavits competent summary judgment proof?

Summary judgment is appropriate only if the record before the Court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).  A fact is material if it could affect the outcome of the lawsuit, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Reviewing courts must review all evidence and all inferences drawn from that evidence in a light most favorable to the non-moving party. *Hibernia Nat'l Bank v. Carner,* 997 F.2d 94, 97 (5th Cir.1993).  Thus, summary judgment is proper if there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, 242 (1986).

# VI.
## STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

Genuine issues of material fact exist related to Defendant's affirmative defense. Plaintiffs dispute the following allegations contained in Defendant's "Statement of Facts," which Defendant contends are undisputed. For the vast majority of Defendant's "undisputed facts," the only evidence offered to support them are the affidavits of Judy Cuellar, Terry Mendez, and Mary Garza. Plaintiffs object to a large portion of these affidavits, for reasons set forth below. Defendant also relies on documentation which is neither authenticated nor admissible, to which Plaintiffs also object, as explained below.

**1.    Defendant alleges:**

> The plaintiffs are all Food Services Managers, and as such, are the managers who have ultimate responsibility for the supervision and operation of their cafeterias…The food service manager is that individual who has overall supreme on site supervisory responsibility over the operations of each school cafeteria.

> (Defendant's Motion for Summary Judgment, ¶ 6).

**Plaintiffs' Response:** Plaintiffs dispute these assertions. Plaintiffs, as Food Services Managers, do not have "ultimate responsibility" for the supervision and operation of their cafeterias, nor do they have "overall supreme on site" responsibility for the operation of each school cafeteria. Plaintiffs do not plan the menus of the meals they serve, or plan the budget of the cafeteria. (P. Ex. A-G, ¶ 6-7; P. Ex. J, p. 21, lines 10-14). Plaintiffs have no authority or input over which employees are transferred to their cafeterias or assigned as substitutes to their cafeterias. (P. Ex. A-G, ¶ 9). Plaintiffs do not evaluate their subordinates, but merely make recommendations to the District Area Supervisors as to the evaluation. (P. Ex. A-G, ¶ 5). Plaintiffs do not have the authority to discipline their subordinates, but may make recommendations which may or may not be considered by upper-level District administrators. (P. Ex. A-G, ¶ 12). Plaintiffs are not

allowed to authorize overtime for their subordinates. (P. Ex. A-G, ¶ 8). Plaintiffs do not set the number of hours their subordinates work, nor are they allowed to authorize overtime (P. Ex. A-G, ¶ 8). Plaintiffs are not responsible for recommending promotions of the employees they supervise. (P. Ex. A-G, ¶ 5). Plaintiffs do not set or adjust the cafeteria workers' rates of pay. (P. Ex. A-G, ¶ 8). Only one Plaintiff has been involved in a hiring committee to hire the clerk at her cafeteria (P. Ex. G, ¶ 11). Plaintiffs have no input into the hiring of cafeteria line workers or custodians. (P. Ex. A-G, ¶ 10). Plaintiffs do not handle the grievances of the workers in their cafeterias. (P. Ex. J, p. 41, lines 22-25—p. 42, lines, 1; P. Ex. A-G, ¶ 13).

All of the aforementioned managerial duties are left to the central office administrators, such as the Area Supervisors, Food Service Director, or Director of Classified Personnel. Without authority over these duties, Plaintiffs do not have "ultimate responsibility" for the supervision and operation of their cafeterias. Such a lack of discretion of Plaintiffs creates a genuine issue of material fact as to whether their primary duty is that of managing the enterprise of Defendant.

2.      **Defendant alleges:**

> The Food Services Managers are not required by the Brownsville ISD to prepare food, to serve food or to clean up their kitchens or cafeterias (Defendant's Motion for Summary Judgment, ¶ 6) …The Food Service Managers are not required by the District to personally serve food, prepare the meals or clean the cafeteria even in the event that one of their cafeteria employees calls in sick. (Defendant's Motion for Summary Judgment, ¶ 7). Defendant further alleges that Plaintiffs "elect" to "work the line or assist in the preparation of food." (Defendant's Motion for Summary Judgment, ¶ 8). The District contends that it "does not require the cafeteria managers to engage in such activities which are always done at the cafeteria managers [sic] discretion…" (Defendant's Motion for Summary Judgment, ¶ 8).

**Plaintiffs' Response:** Plaintiffs dispute these facts. Food Services Managers are required to do any duty necessary to make sure the requisite number of meals is prepared and served daily to

the students and to ensure that the kitchen and cafeteria are clean. (P. Ex. A-G, ¶ 4). When food service workers are absent and substitutes are not provided, which happens often, Plaintiffs routinely prepare food, serve meals, and clean up after meals, as is required by their job.  (P. Ex. A-G, ¶ 4).  In fact, even when the cafeteria is fully staffed, many times, it is necessary for Plaintiffs to perform the duties of other nonexempt workers.  (P. Ex. A and B, ¶ 4;).  Some of the Plaintiffs spend multiple hours a day performing these nonexempt duties. (P. Ex. A, ¶ 4; P. Ex. H, Deposition Excerpt of Irma Guzman, p. 15, lines 12-25).

Further, Defendant's own statement of fact establishes that this point is disputed. Defendant states:

> Guerra testified that 'sometimes when there are no substitutes available, we (the food service managers), have to get in there.' (G. Guerra depo. Ln, 16 to ln. 20. Guerra admitted that 'it is not something that happens every day', but that it does happen 'sometimes' Guerra depo. Ln. 21-25,…Guerra testified that on average, on or two days a week, there are not substitute food service workers available which *require* [sic] her to work the line serving breakfast and or lunch. (G. Guerra depo. P 19 line 1 to 5).

(Defendant's Motion for Summary Judgment, ¶17).

3.      **Defendant alleges:**

> The 9 Plaintiffs are all paid on a salary basis and have at all relevant times earned more than the minimum salary required for them to be executive [sic] exempt…The predetermined amount of salary is not reduced because of variations in the quality or quantity of the Plaintiffs [sic] work." (Defendant's Motion for Summary Judgment, ¶9).

**Plaintiffs' response:**  Plaintiffs are not paid on a salary basis as required under the FLSA. Defendant BISD concedes that it has an actual practice of deducting pay in half-day increments if an employee's leave balance is exhausted.  (D. Ex. B, Affidavit of Mary Garza).  Moreover, former BISD Food Service Director, Dora Rivas, testified that deducting in half-day increments was not pursuant to a public accountability policy, but rather because it was "a payroll

technology" issue.  (Exhibit I, Deposition excerpts from deposition of Dora Rivas, p. 51, line 8-14).

Furthermore, some Plaintiffs have had their salary docked for absences of less than a full day after they had exhausted all of their leave.  (P. Ex. B, ¶17; P. Ex. H, p. 18, l. 13-25).  With their summary judgment evidence, Plaintiffs have established that there is a genuine issue of material fact as to whether Plaintiffs are paid on a salary basis.

4.      **Defendant alleges:**

...[E]ach of the Plaintiffs is paid a salary throughout the summer when school is closed despite the fact that Plaintiffs do not generally work during the summer.

(Defendant's Motion for Summary Judgment, ¶9).

**Plaintiffs' Response:**  Plaintiffs are paid a set amount based on a predetermined number of days they are required to work.  Plaintiffs are paid for 200 days a year, which includes their paid vacation days and paid District holidays.  Other than those 200 days, Plaintiffs are not paid for days they do not work.  If Plaintiffs receive a paycheck during the summer, it is because they have opted to have their 200 paid days spread over 12 months, not because the District pays them for days that they do not work. (P. Ex. A-G, ¶ 3).

5.      **Defendant alleges:**

...[T]he input and recommendations of the Food Service Managers as to hiring, firing, advancement promotion [sic] or any other change of status of other employees are always given great weight.  Each of the Cafeteria Managers sits on a three person hiring committee and has significant input into all hiring decisions which take place within their cafeteria.  (Defendant's Motion for Summary Judgment, ¶10).

**Plaintiffs' Response:**  Plaintiffs dispute these facts.  Plaintiffs do not have significant input into all hiring decisions which take place within their cafeterias.  In fact, more often than not, they have no input (P. Ex. A-F, ¶ 9-11).  Other than the cafeteria manager, there are three other

categories of cafeteria employees at each campus cafeteria:  1) the cafeteria clerk (who functions as an assistant to the manager); 2) the cafeteria workers (who work on the food preparation and service lines); and, 3) cafeteria custodians.  (P. Ex. J, p. 23, lines 23-25—p. 24, lines 1-3). Only the cafeteria clerk is hired by a committee, with which the cafeteria managers are sometimes involved.  (P. Ex. A-G, ¶ 10).  Most of the Plaintiffs have never sat on such a committee.  (P. Ex. A-F, ¶ 11).  Terry Mendez, the Defendant's Director of Food Services concedes that food service workers and custodians are assigned to the cafeteria by higher administration. (P. Ex. J, p. 35, lines 18-25—p. 36, lines 1-10). In fact, Plaintiffs have little to no input as to the assignment of food service workers or custodians assigned to their cafeterias.  If the Food Service Manager is allowed to sit on the committee to hire the clerk, the manager's input is given no greater weight than any other member of the committee.   The other members of the committee do not simply defer to the manager's choice.

Moreover, Plaintiff Blanca Sepulveda was actually issued a Notice of Warning for her actions related to hiring a clerk. (P. Ex. G, Affidavit of Blanca Sepulveda; P. Ex. G-1, Notice of Warning).  The Notice of Warning is the disciplinary step just prior to termination.  (P. Ex. J, p. 31, lines 7-11).   While the committee selected two individuals as finalists for the position, Sepulveda preferred another candidate.  (P. Ex. G, ¶ 12).  When Sepulveda informed District personnel that she preferred to hire her candidate over the candidate preferred by the committee, she received the Notice of Warning and a threat of termination.  (P. Ex. G, ¶ 13; P. Ex. G-1,). Clearly, Plaintiffs' recommendations as to hiring are not given significant weight; to the contrary, the evidence reveals, and a jury could believe, that it can be almost a terminable offense for managers to strongly advocate for their preferred choice of cafeteria clerk.

6.     **Defendant alleges:**

The District does require that hiring decisions at the District not be made unilaterally but by committee.

(Defendant's Motion for Summary Judgment, ¶ 11).

**Plaintiffs' Response:**  As evidenced above and by Plaintiffs' affidavits, the only hiring decision made by committee in relation to the Food Services Department is the clerk position and the cafeteria manager position.  Food service workers and custodians are not hired by committee, nor are Plaintiffs given any input into the hiring of the line workers or custodians.  (P. Ex. A-G, ¶ 10).

## VII.
## SUMMARY OF THE ARGUMENT

Defendant has failed to establish that it is entitled to summary judgment based on its affirmative defense that Plaintiffs are exempt from the overtime requirements of the Fair Labor Standards Act pursuant to the executive exemption.  The Defendant has failed to establish that Plaintiffs are paid on a salary basis, as it is undisputed that Defendant has an actual practice of making deductions from Plaintiff's pay in less than full-day increments if their leave is exhausted.  Furthermore, Defendant has failed to establish that its practice of making deductions from leave and/or pay in half-day increments is a practice based on the principles of public accountability.

Secondly, Defendant has failed to establish that Plaintiffs qualify for the executive exemption under the duties test.  There is a genuine issue of material fact as to whether Plaintiffs have the authority to hire and fire other employees, or if their suggestions to do so are given particular weight.  Further, there is a genuine issue of material fact as to whether Plaintiffs' primary duty is the management of the enterprise in which they are employed.  For these reasons, Defendant's Motion for Summary Judgment should be denied.

# VIII.
## ARGUMENT AND AUTHORITIES

The FLSA exempts from its overtime requirements any employee who is paid on a salary basis and who works in a *bona fide* executive, administrative or professional capacity. *See* 29 U.S.C. § 213(a)(1). *Cowart v. Ingalls Shipbuilding, Inc.* 213 F.3d 261, 262 -263 (5th Cir. 2000). To qualify as a *bona fide* executive, the employer must prove:

1.  The employee is compensated on a salary basis at a rate of not less than $455 per week;

2.  The employee's primary duty is management of enterprise in which the employee is employed;

3.  The employee customarily and regularly directs the work of two or more other employees; and,

4.  The employee has the right to hire and fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees is given particular weight.

29 C.F.R. § 541.100(a)(1)-(4). The burden falls on the employer to establish that an employee is exempt from the overtime protections. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990). Defendant has failed to establish as a matter of law that it meets the first, second, and fourth prongs of the executive exemption.

**A.    The determination of whether an employee is exempt from the overtime pay requirements of the FLSA is primarily and initially a question of fact for the Court.**

In FLSA cases, the employer claiming an exemption bears the burden of proving the exemption applies and exemptions are narrowly construed against the employer. 29 U.S.C. 201 *et seq.* Here, Defendant contends that Plaintiffs are salaried, executive employees, and are therefore exempt from the overtime regulations of the FLSA. However, Plaintiffs are not

salaried employees as defined by the Act, and further, their primary duties are not those of managing Defendant's enterprise.[1]

The determination of whether an employee has exempt status pursuant to the executive exemption is "intensely factbound and case specific." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990). While the ultimate decision whether an employee is exempt under the FLSA's overtime provision may be a question of law, the inquiry into whether an employee is exempt from the FLSA's overtime provisions is primarily a question of fact which is reviewed under the clearly erroneous standard. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000). The Fifth Circuit has recognized that the proper standard of review of lower courts' determinations of employees' exempt status is perplexing. *Dalheim* at 1225. The Court explained:

> This confusion stems in part from the inherent difficulty of distinguishing among questions of 'law,' 'fact,' and 'law and fact," and in part from the nature of the inquiry, in which historical facts and factual inferences are often indistinguishable form the legal standards we must apply...In *Beliz v. W.H. McLeod & Sons Packing Co.,* this court examined the confusion in our prior cases over whether the determination of employee status is properly characterized as a question of law or fact. We held that the ultimate determination of employee status is a question of law, whereas the district court's 'subsidiary findings are of fact.'

*Dalheim* at 1225.

---

[1] The pertinent time period of Plaintiffs' claims is from March 2002 through the present. (*Plaintiffs' First Amended Complaint*). During this time period, the FLSA regulations were amended. Prior to August 2004, there were two separate tests to determine if an employee was exempt under the executive exemption—the "short test" and "long test." The short test applied to employees who made over $250 per week. Plaintiffs do not challenge whether they were paid the threshold amount to be exempt employees, either before ($250 per week) or after ($455 per week) the new FLSA regulation were enacted. Accordingly, the inquiry as to whether Plaintiffs are correctly classified as exempt employees pursuant to the executive exemption is the same throughout the pertinent time period, regardless of the new regulations. Before and after the new regulations, employees must be "salaried" as set forth in the Act, and their "primary duty" must consist of the management of the enterprise. Plaintiffs contend that they are not salaried employees as contemplated by the statute, nor are their primary duties that of managing the Defendant's enterprise.

In attempting to determine whether an employee is exempt pursuant to the executive exemption, this Court must make findings of fact and conclusion of law analogous to those in determining employee status.   *Dalheim* at 1225.   The United States Supreme Court acknowledged FLSA claims "typically involve complex mixed questions of fact and law..." *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 738, 743 (1981).   Thus, how an employee spends his or her time is a question of fact.   Whether those activities exclude the employee from overtime benefits is a question of law.   *See e.g., Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).   There are genuine issues of material fact as to how Plaintiffs spend their time, and whether they are paid on a salary basis.

In deciding whether an employee is exempt pursuant to the executive exemption, the Court must first assert findings of historical fact.   Secondly, the Court must make inferences from the facts by applying the regulations and interpretations under the FLSA.   This too is a factual determination.   Only then does the Court make the ultimate determination of whether an employee is exempt.   *Lott* at 331, citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990).

On a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations and must view the facts and inferences in the light most favorable to the nonmoving party.   FED. R. CIV. P. 56.   As such, Defendant may not prevail on its affirmative defense in a summary judgment unless there are no genuine issues of material fact as to the affirmative defense.   Here, the summary judgment evidence proffered by Defendant is incompetent and inadmissible.   Moreover, Plaintiffs are providing summary judgment evidence, below, that establishes that there are genuine issues of material fact.   For these reasons, summary judgment on Defendant's affirmative defense is inappropriate.

**B. There are genuine issues of material fact as to whether Plaintiffs are salaried employees as defined by the Act.**

To qualify for a bona fide executive exemption, an employee must earn wages of at least $455 per week (or $250 per week under the old regulations), and must be paid on a "salary" basis. 29 C.F.R. § 541.117-541.118.  Under the regulations, an employee is a salaried and not an hourly employee if that person "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed..." 29 C.F.R. § 541.118(a). If employees are covered by a policy which allows deductions in pay for disciplinary reasons, or other deductions in pay as a practical matter, that person cannot be considered an exempt employee. *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997).

This standard is met "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Auer,* 117 S.Ct. at 911.

> An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly received each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount *is not subject to reduction* because of variations in the quality or quantity of the work performed...

29 C.F.R. § 541.118(a) (1994) (emphasis added).

It is undisputed that Defendant's pay system makes pay reductions for partial-day absences taken for personal reasons when the employee does not use accrued leave.  (D. Ex. B, p. 2-3; P. Ex. B, ¶ 17).  Ms. Garza, the Administrator for Payroll at the District admits:

> The District, as a public entity also occasionally makes deductions from leave balances or pay for absences of a half day.  The District makes deductions from

leave balances or when none is left, from pay when an exempt employee is absent from work for one half day for personal reasons other than sickness or disability. When one of the plaintiffs is absent for one half day to sickness or disability deductions are made from leave balances, and when none is left from pay, in accordance with the Districts [sic] bona fide plan, policy or practice of providing compensation for salary lost due to illness.

(D. Ex. B).

It is well-established that an employer may only make deductions from a salaried employee's wages for absences of a *full day or more* for personal reasons or sickness. 29 C.F.R. § 541.118(a)(2) (emphasis added). If an employee's salary is docked for a partial-day absence, the regulations presume that the employee is not paid on a salary basis. *Id.* Thus, Defendant must show that deductions from wages for absences of less than a full day were based on "a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability..." 29 C.F.R. § 541.5d. Defendant has failed to meet its burden.

In its Motion for Summary Judgment, Defendant concludes that simply because it is a governmental employer, it has the right to make deductions in salary of its exempt employees in increments of less than a full day, without losing the exemption. ("Special rules which apply only to public employers such as the Brownsville ISD permit the deduction from pay or leave balances in increments less than one day.") *Defendant's Motion for Summary Judgment*, ¶ 48. Defendant's analysis is incomplete. While a governmental employer can meet the requirements of the salary basis test for exemption from the FLSA even if it has a policy for docking employees for partial-day absences, the policy must be established pursuant to principles of public accountability. *Demos v. City of Indianapolis*, 302 F.3d 698 (7th Cir. 2002). The regulations do not define "public accountability." However, the plain language of the

regulations "suggest that providing proof of the government's purpose for creating or maintaining the pay system is relevant to determining whether the exception applies." *Id* at 702. At a minimum, the governmental employer "must prove that its policy is consistent with the government's efforts to maintain a precise accounting of its employees' hours *for reasons that extend beyond calculating an appropriate salary,* such as avoiding ghost-payrolling problems." *Id* at 702-03 (emphasis added).

In *Spradling v. City of Tulsa, Oklahoma*, the Tenth Circuit found that the City failed to satisfy its burden of demonstrating that its pay system was based upon public accountability laws or principles, and thus it could not benefit from the relaxed salary test for overtime exemption. 95 F.3d 1492, 1499-1500 (10th Cir. 1996). The Court concluded that not only was it the intent of the FLSA to require governmental employers to prove their pay systems were based upon public accountability principles, "FLSA case law is clear that the employer bears the burden of demonstrating its right to an exemption." *Id* at 1499. Thus, it was also the employer's burden to demonstrate that a particular pay system was based upon public accountability principles. *Id.*

Defendant has not offered any evidence that its pay system was established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability. In fact, in its Motion, Defendant does not even assert that its pay system is based on principles of public accountability. Instead, Defendant leaps to the conclusion that its policy of making deductions for partial-day absences is protected under the public accountability exception. (*Defendant's Motion for Summary Judgment,* ¶ 58-60).

Defendant may attempt to argue that the affidavit of Mary Garza is evidence that its docking policy is established pursuant to principles of public accountability. Ms. Garza's affidavit on this matter, however, is no more than a conclusory statement to which Plaintiffs have

objected (see below).   Garza cites no statute, ordinance, regulation or policy to support her

assertion.  Garza's assertion, cited above, is simply a conclusory statement that is not competent

summary judgment proof.

**C.     Defendant's "Window of Correction" argument is not applicable to matter.**

Defendant argues alternatively that even if it was not entitled to the relaxed overtime

exemption based on a public accountability exception, its pay deductions are protected by the

"Window of Correction" provision set forth in 29 C.F.R. § 541.118.  (*Defendant's Motion for*

*Summary Judgment*, ¶ 61.)  Defendant relies on the affidavit of Mary Garza to assert that any

deduction from pay for less than full-day increments was accidental and immediately corrected.

*Id.* Defendant, however, misstates the content of Garza's affidavit.  Garza concedes:

> The District, as a public entity also occasionally makes deductions from leave
> balances or pay for absences of a half day.  The District makes deductions from
> leave balances or when none is left, from pay when an exempt employee is absent
> from work for one half day for personal reasons other than sickness or disability.
> When one of the plaintiffs is absent for one half day due to sickness or disability
> deductions are made from leave balances, and when none is left from pay, in
> accordance with the Districts [sic] bona fide plan, policy or practice of providing
> compensation for salary lost due to illness…Of course, where an employee failed
> to go to work on a given day or half day, the District might make a deduction first
> from the employees [sic] leave balance and only if there was no remaining leave
> time, from the employees [sic] pay.  The District does not deduct for hours
> missed, only if the employee simply failed to work for a day or half day.

(D. Ex. B, p. 2-3).

Garza goes on to describe several instances in January, February and March 2005 where

leave balances were erroneously deducted in increments of less than a day, and one instance

where pay was actually docked for an absence of less than a day.  (D. Ex. B., p. 3).  Garza does

not, however, assert that the policy of deducting leave or docking pay in half-day increments

which she describes in her affidavit generally was erroneous, and thus corrected each time.

From Garza's affidavit, it is clear that the District has a practice of deducting from pay for absences of less than a full day, and thus, no "window of correction" was utilized.

Clearly, Defendant considers acceptable its practice of deducting from leave and/or pay for absences of less than a full day. There is no evidence that Defendant ever considered this policy unacceptable, and thus corrected or reimbursed any such deductions. As such, Defendant's reliance on *Moore v. Hannon Food Servs., Inc.*, 317 F.3d 489 (5th Cir. 2003) is misplaced. There is no evidence that any such corrections have been made as a result of Defendant's practice of deducting from leave or pay for absences of less than a full day.

Defendant has conceded that it has an actual practice of deducting from the pay of its exempt employees, and Plaintiffs, for absences of less than one full day when the employee does not used accrued leave. (D. Ex. B, p. 2-3). If employees are covered by a policy which allows deductions in pay for disciplinary reasons, or other deductions in pay as a practical matter, that person cannot be considered an exempt employee. *Auer v. Robbins,* 519 U.S. 452 (1997). Thus, the only way for Defendant to maintain Plaintiffs' exempt status would be to prove that its pay system was established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, which Defendant has failed to do. Because Defendant has failed to meet its burden, it cannot establish that Plaintiffs' are paid on a salary basis. Consequently, Defendant has failed to meet its burden to show that it is entitled to judgment as a matter of law. As such, Defendant's Motion for Summary Judgment should be denied.

**D.  There are genuine issues of material fact of whether Plaintiffs' primary duties are those of managing Defendant's enterprise.**

As set forth above, to qualify for the executive exemption, the employee's primary duty must be management of the enterprise in which the employee is employed. 29 C.F.R. § 541.100(a)(2). The regulations further clarify what is meant by the term "management." *See* 29 C.F.R. § 541.102. The regulation focuses on activities typically associated with management or supervision, such as interviewing and selecting candidates, firing employees, setting and adjusting rates of pay and hours of work, evaluating performance, and handling employee complaints and grievances, disciplining employees, and planning and controlling a budget. *Id.*

There is a genuine issue of material fact as to whether Plaintiffs' primary duties constitute "management" duties as contemplated by the Act. Plaintiffs' summary judgment evidence establishes that Plaintiffs do not perform a large majority of duties which are considered "management" duties under the regulations. *See* 29 C.F.R. § 541.102. Plaintiffs do not interview or select a majority of the individuals they supervise, nor does the District seek any input from them on the selection of those employees. Plaintiffs affirm:

> I do not select the employees who are hired or transferred to work in my cafeteria. When substitute workers are necessary, I inform administration, and a substitute is sent if one is available. The administration does not seek my input on substitute assignments... The only employees who are hired by a committee to work in the cafeteria are the clerks and the managers. No other employees who work in the cafeterias are hired by committee. Because of this, I do not have significant input into the hiring of regular food service workers or custodians who work in my cafeteria. Those individuals are assigned to the cafeterias without any input from me.

(P. Ex. A-F, ¶ 9-10). Plaintiffs cannot terminate employees (P. Ex. A-G, ¶12), and have provided evidence that in some cases, their suggestions have been ignored. Plaintiff Adriana Rodriguez affirmed:

> In the past three years, I have recommended about two or three employees for a write-up or other disciplinary action. One employee was written up numerous times. I recommended that he be terminated. Instead of terminating him, the

---

District transferred him to another campus, several months after I recommended his termination.

(P. Ex. F, ¶ 14).

Plaintiffs do not set or adjust the rates of pay of the cafeteria workers. (P. Ex. A-G, ¶ 8). Plaintiffs do not authorize overtime for the cafeteria workers. (P. Ex. A-G, ¶ 8). They do not handle employee complaints and grievances. (P. Ex. A-G, ¶ 13). Plaintiffs do not plan or control a budget for their cafeterias. (P. Ex. A-G, ¶ 7).

Plaintiffs do not evaluate or discipline the employees that work in their cafeterias. (P. Ex. A-G, ¶ 5, 12). Their discretion in those matters is limited to making a recommendation to the District Area Supervisors who then may do what they wish. *Id.* Moreover, in the case of Plaintiff Irma Guzman, her repeated attempts to discipline an employee were ignored.

In the last three years, on eight different occasions Guzman recommended that an employee, Matilde Sanchez, be written up and submitted it to her supervisor, Irma Lisa Pineda. (P. Ex. H, Deposition excerpt from deposition of Plaintiff Irma Guzman; p. 8, 1. 2-20; p. 9. 1. 24-25; p. 10, 1. 18-20; p. 11, 1. 17-25; p. 12, 1. 2-14). Of those eight recommendations, the employee never received the reprimand. Guzman's area supervisor never followed up on her recommendations. Further, no higher-level administrator, ever came to the cafeteria to counsel the employee, which is the normal procedure if the employee receives a reprimand. *Id.*

Plaintiffs' summary judgment evidence establishes that there is a genuine issue of material fact as to whether their primary duties are those of managing the Defendant's enterprise. The evidence establishes that Plaintiffs do not perform a large portion of the duties consider to be "management" duties under the regulations. As such, Defendant has failed to establish as a

matter of law that Plaintiffs are exempt employees pursuant to the executive exemption.

Accordingly, Defendant's Motion for Summary Judgment should be denied.

**E.    There is a genuine issue of material fact as to whether Plaintiffs' suggestions and recommendations as to the hiring, firing, advancement, promotion, or other change of status of other employees is given particular weight.**

The fourth prong of the executive exemption test requires that to be eligible for the

exemption employees must have the right to hire and fire other employees or the employee's

suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other

change of status of other employees to be given particular weight.  29 C.F.R. § 541.100(a)(4).

The regulations further clarify the meaning of "particular weight." 29 C.F.R. § 541.105.

> To determine whether an employee's suggestion and recommendations are given "particular weight," factors to be considered, include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations;  the  frequency  with  which  such  suggestions  and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon...An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105.

It is undisputed that Plaintiffs do not have the unfettered right to hire, fire, demote, or

promote employees.  (P. Ex. A-G, ¶ 12).  Thus, the question for the Court is whether Plaintiffs'

suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other

change of status of other employees is given "particular weight."  Plaintiffs contend that there is

a genuine issue of material fact as to this element of Defendant's affirmative defense.

While there are three job positions at each cafeteria other than the manager (food service

worker, custodian, and clerk), Plaintiffs have no real input as to the hiring, firing or promotion of

two of these categories.  Food service workers, or line workers, and custodians are assigned to the cafeterias by higher administrators.  Plaintiffs affirm:

> The only employees who are hired by a committee to work in the cafeteria are the clerks and the managers.  No other employees who work in the cafeterias are hired by committee.  Because of this, I do not have significant input into the hiring of regular food service workers or custodians who work in my cafeteria. Those individuals are assigned to the cafeterias without any input from me.

(P. Ex. A-G, ¶ 10).

Plaintiffs have established that it is very rare that their input is sought in the hiring of employees who work in their cafeterias.  The only hiring decision which they are allowed to be part of is the committee hiring of the cafeteria clerk.  However, most of the Plaintiffs have never participated in one of these hiring committees. (P. Ex. A-F, ¶ 11). For example, while Plaintiff Mary Hernandez has been employed as a cafeteria manager by the District for nineteen years, she had never participated on a hiring committee for a clerk.  (P. Ex. C, ¶ 2, 11).  Similarly, Plaintiff Gloria Guerra has been cafeteria manager for the District for approximately eighteen years, yet she has not participated in a clerk hiring committee.  (P. Ex. A, ¶ 2, 11).  Plaintiff Adriana Rodriguez has been the cafeteria manager over catering for approximately ten years, and she has never participated in a clerk hiring committee.  (P. Ex. F, ¶ 2, 12).  Plaintiffs Araceli Soto and Leonel Parras have been employed by the District as cafeteria managers for approximately five years, and neither has participated in a clerk hiring committee.  (P. Ex. B, ¶ 2, 11; P. Ex. E, ¶ 2, 11).

The only Plaintiff who has been involved in a hiring committee for a cafeteria clerk is Blanca Sepulveda. (P. Ex. G, ¶ 11).  As set forth earlier, however, Sepulveda's recommendation was hardly given "particular weight."  Sepulveda affirmed:

There was an opening for a clerk at my cafeteria at Martin Elementary.   I
informed a BISD employee, Guadalupe Cortinas of the opening.   I had worked
with Ms. Cortinas previously at Benevides Elementary.   Ms. Cortinas interviewed
before the hiring committee, which I was a part of.   I wanted to hire Ms. Cortinas
for the clerk position at Martin.   The other supervisors who were on the
committee pressured me to accept the other candidate, even though I wanted Ms.
Cortinas to fill the position.

After the interviews, I spoke to the individual who processes the applications.   I
questioned her as to which applicant would get the position at Martin.   I told her
that I wanted Ms. Cortinas to fill the position.   I received a notice of warning from
my supervisor as a result.

(P. Ex. G, ¶ 11-12).

Thus, instead of giving Sepulveda's choice for the clerk position particular weight, the

other participants of the committee pressured Sepulveda to accept another candidate.   Upon

voicing her opinion for another candidate, Sepulveda was issued a Notice of Warning which

threatened her with termination for the incident.   (P. Ex. G-1).

Plaintiffs also have little or no input as to the termination of employees.   Plaintiffs do not

have the authority to unilaterally terminate employees.   (P. Ex. A-G, ¶ 12).   Plaintiff Adriana

Rodriguez wrote-up an employee numerous times and recommended his termination.   Only after

several months was the employee transferred from her cafeteria, and not terminated.   (P. Ex. F, ¶

14).

Finally, Plaintiffs have little to no role in advancement of employees which they

supervise.   Plaintiffs affirmed that they "do not appraise the employees' productivity and/or

efficiency for the purposes of recommending promotions."   (P. Ex. A-G, ¶ 5).   There is no

evidence that Plaintiffs are involved in any way with the advancement or any other change of

status of other employees.

Based on Plaintiffs' summary judgment evidence, it is clear that there is a genuine issue

of material fact as to whether Plaintiffs have the right to hire and fire other employees or if their

suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees is given particular weight. As such, Defendant's Motion for Summary Judgment should be denied.

## IX.
### OBJECTIONS TO DEFENDANT'S SUMMARY JUDGMENT EVIDENCE
### and MOTION TO STRIKE DEFENDANT'S SUMMARY JUDGMENT EVIDENCE

The following evidence submitted in support of Defendant's Motion for Summary Judgment should not be considered by the Court because it is either improperly authenticated or is inadmissible. Plaintiffs hereby move that the Court strike the following forms of summary judgment evidence submitted by Defendant:

**A.      Attached documentation.**

Defendant relies on Exhibit A-1: job descriptions for Plaintiffs' positions; Exhibit B-1: Organizational Chart; Exhibit D: Policies of Brownsville ISD CFEA (LEGAL); Exhibit D-1: Policies of Brownsville ISD DEA (LOCAL); Exhibit D-2: Policies of Brownsville ISD DAB (LOCAL); Exhibit D-3: Policies of Brownsville ISD DC (LOCAL); Exhibit D-4: Policies of Brownsville ISD DC (LEGAL); Exhibit D-5: Policies of Brownsville ISD DEA (LEGAL); Exhibit D-6: Policies of Brownsville ISD DK (REGULATION).

These documents are neither properly authenticated nor admissible, as they constitute hearsay. To be proper summary judgment evidence, documents must be properly authenticated and otherwise admissible.

Defendant makes no attempt to authenticate its Exhibits B-1, D, D-1, D-2, D-3, D-4, D-5, or D-6. In fact, these documents are not referenced in the affidavits provided by Defendant. Defendant fails to even assert testimony that the documents attached as exhibits are what they purport to be. *See* FED. R. EVID. 901(b)(1). Because Defendant has failed to properly

authenticate the aforementioned documents, they are not competent summary judgment evidence and should be stricken.

Additionally, the documentary evidence provided, Exhibits B-1, D, D-1, D-2, D-3, D-4, D-5, D-6, and Exhibit A-1 are also inadmissible because they constitute hearsay.  *See* FED. R. EVID. 801.  Defendant has failed to provide the Court with any information that would qualify as one of the exceptions to the hearsay rule, such as a business records affidavit.  *See* FED. R. EVID. 902 (11), (12).  As such, the policies and job descriptions provided by the District as summary judgment proof are inadmissible hearsay and should be stricken.

**B.      Affidavits**

Defendant has attached the affidavits of Judy Cuellar, Mary Garza, and Terry Mendez as evidence in support of its Motion for Summary Judgment.  Affidavits must show that the affiant is competent to testify, be based on the affiant's personal knowledge, and state admissible facts. FED. R. CIV. P. 56(e).  Generally, an affiant is competent to testify when her testimony is grounded in observation or other personal experience and is not based on speculation, intuition, or rumors about matters remote from that personal knowledge.  *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991).  Further, the facts stated in the affidavit must constitute admissible evidence.  *See Lujan v. National Wildlife Fed'n* 497 U.S. 871,888 (1990).  It is not sufficient for the affiant to make bare allegations of fact, ultimate or conclusory facts, or legal conclusions.  *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998).

**1.  Affidavit of Judy Cuellar**

Plaintiffs object to the statement in the first full paragraph of the second page of Cuellar's affidavit which states:

> This is incorrect and has always been incorrect. The District has classified the plaintiffs [sic] job positions, FS Managers I and II, as being exempt since the mid-seventies. The entry of the term 'non exempt' on the job descriptions of the FS-Managers was a mere clerical error as the District has always considered, and treated those positions to be exempt salary positions and has otherwise, always represented to the plaintiffs and everyone else that those positions are exempt positions.

Cuellar affirms that she has only been employed by the District for ten years, and has only been Director of Classified Personnel since 2004. As such, Cuellar does not have personal knowledge of how the Food Service Managers positions have been classified in the past, or since the mid-seventies. Any knowledge she has on this issue is based on hearsay. Cuellar is not competent to testify as to whether the "non-exempt" notation on the job description "has always been incorrect." As such, this portion of Cuellar's affidavit should be stricken and not be considered.

Plaintiffs object to the statement in the second full paragraph of the third page of Cuellar's affidavit which states:

> The only incorrect statement on the job description is that one of the clerks mistakenly typed "non exempt" on the form when in fact those positions are and have always been exempt positions.

For the reasons set forth above, and hereby incorporated, Plaintiffs object to this statement. As such, this portion of Cuellar's affidavit should be stricken and not be considered.

Plaintiffs object to the statement in the first paragraph of the fourth page of Cuellar's affidavit which states:

> The Food Service Managers are all paid on a salary basis by the District. Their salary is predetermined and is not adjusted up or down based on the quantity or the quality of their work or the hours worked...[T]he District does not and has never used such time records for the purpose of computing pay of the plaintiffs or any other salaried employee.

Cuellar provides no basis for her statement.  Cuellar does not testify that as Administrator of Classified Personnel that she has knowledge of the pay structure or policies for computing pay of salaried employees.  Cuellar's affidavit fails to establish that she has personal knowledge of the payroll issues she is asserting.  She provides no reference to any District policy or procedure that would support her statement.  Moreover, Cuellar does not have personnel knowledge of what the District has or "has never" done, as she has only been in her position since 2004. Accordingly, this portion of Cuellar's affidavit should be stricken.

Plaintiffs object to the statement in the first paragraph of the fifth page of Cuellar's affidavit which states:

> The Food Service Managers evaluate their employees, provide positive and constructive criticism of how their subordinates are performing their tasks, maintain and update their job schedules, [sic]

Cuellar cites no admissible policy or job description for the basis of this statement.  Cuellar is not on-site with any of the Food Service Manager Plaintiffs, and has no personal knowledge if the managers engage in the activities.  Cuellar provides no basis for her knowledge, such as her personal observations; rather she only makes a conclusory statement.  As such, this portion of Cuellar's affidavit should be stricken and not be considered.

Plaintiffs object to the statement in the first paragraph of the sixth page of Cuellar's affidavit which states:

> The only individual within the Bronwsville [sic] ISD who has the authority to autonomously hire any employee is the District Superintendent.  Decisions to hire new employees are generally made by a hiring committee and the recommendations of those committees are forwarded up the chain to be made by the Superintendent of Schools. Each of the plaintiffs, as a Food Service Manager, sits on a hiring committee for all new employees which might be assigned to the District.  The hiring committees, as a matter of District practice, give the Food Service Manager's opinions particular weight because they are the supervisors who will supervise the new employee. In overwhelming majority of the cases, the

recommendations of the food service managers are followed.  The Cafeteria Managers are also the supervisors who are responsible for disciplining and recommending the termination of employees under their supervision or control. Where an employee is to be written up, the Food Service Manager is to propose a write up and forward it to his supervisor at the District level.  The District gives the recommendations of the Food Service Managers great deference.

Cuellar provides no basis for these statements.  She does not reference any admissible policy which sets out the hiring authority in the District.  Cuellar does not contend that she sits on any such hiring committees or has any involvement with such hiring committees that would give her personal knowledge of the committee process.  Cuellar's statements are wholly conclusory, and she provides no foundation for her knowledge of such statements.  As such, this portion of Cuellar's affidavit should be stricken and not be considered.

## 2.  Affidavit of Mary Garza

Plaintiffs object to the emphasized portions of the following two statements contained in Garza's affidavit, found in the third full paragraph of the second page and in the first paragraph of the third page:

> When one of the plaintiffs is absent for one or more full days due to sickness or disability deductions are made from leave balances, and when none is left, from pay, *in accordance with the Districts [sic] bona fide plan, policy or practice of providing compensation for salary lost due to illness*....When one of the plaintiffs is absent for one half day due to sickness or disability deductions are made from leave balances, and when none is left from pay, *in accordance with the Districts [sic] bona fide plan, policy or practice of providing compensation for salary lost due to illness*.

Garza provides no basis for her assertion that the District's pay system is based on a *bona fide plan, policy or practice*.  She does not reference any such plan or policy, or establish how this practice conforms with such.  Garza fails to establish that she had personal knowledge of such a plan or policy, and as such, is not competent to testify as to it.  Further, Defendants failed to

place into evidence any such plan or policy.  Accordingly, Garza's statement regarding any such *bona fide* plan, policy, or practice should be stricken.

### 3.  Affidavit of Terry Mendez

The first sentence on page three of Ms. Mendez' affidavit states, "The Food Service Managers all sit on a hiring committee when new employees are being interviewed for their cafeteria." This is not only disputed by the Plaintiffs, but this is also disputed by Ms. Mendez in her deposition.

Recalling that there are three categories of employees in each cafeteria besides the manager (clerk, cafeteria line workers, custodians), a committee is assembled only for the purpose of hiring the clerk.  Cafeteria workers and custodians are assigned by the central office and are not screened by a committee upon which the cafeteria manager serves.  Ms. Mendez admitted this in her deposition:

> Q.   You said "we assign food service workers." Who is "we?"
> A:   At the office.
> Q:   Central office?
> A:   Yes.

Mendez deposition, p. 35, lines 18-22.

> Q:   Okay. Let's talk about, then, the custodian and how the custodian is hired –
> A:   Okay.
> Q:   -- or assigned. How does that work?
> A:   If – again, if – if the custodians are already with – within, you know, our department and they're looking to transfer to a school that they – that's for example, again, closer to their home, then, you know, they let us know that – that they are interested in that, and so it would be the same process, you know.

Since the above-referenced statement in her affidavit conflicts with these statements made in her deposition, her affidavit should be stricken as a "sham" affidavit. *See Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996).

## X.
## PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE

In support of their Response, Plaintiffs include the following evidence in the attached appendix:

Exhibit A:      Affidavit of Gloria Guerra

Exhibit B:      Affidavit of Araceli Soto

Exhibit C:      Affidavit of Maria Hernandez

Exhibit D:      Affidavit of Maria Muzquiz

Exhibit E:      Affidavit of Leo Parras`

Exhibit F:      Affidavit of Adriana Rodriguez

Exhibit G:      Affidavit of Blanca Sepulveda

Exhibit G-1:   Notice of Warning Issued to Blanca Sepulveda

Exhibit H:      Deposition excerpts from deposition of Irma Guzman

Exhibit I:      Deposition excerpts from deposition of Dora Rivas

Exhibit J:      Deposition excerpts from deposition of Terry Mendez

## XI.
## CONCLUSION AND PRAYER

Defendant has failed to establish that there is no genuine issue of material fact as to the elements of its affirmative defense. Plaintiffs have established that genuine issues of material fact exist as to whether Plaintiffs are paid on a salary basis, whether Plaintiffs' primary duties are that of managing the Defendant's enterprise, and whether Plaintiffs' suggestions and recommendations regarding the hiring, firing, advancement, promotion or change in status of the employees whom they supervise are given significant weight by the District.

Further, a large portion of the summary judgment evidence provided by Defendant to support its Motion for Summary Judgment is incompetent, unauthenticated, and/or inadmissible. For the reasons set forth above, such evidence should be stricken, and should be considered when deciding Defendant's Motion.

For these reasons, and all those set forth above, Plaintiffs respectfully pray that the Court DENY Defendant's Motion for Summary.  Plaintiffs seek any and all further relief in law and equity to which they may be entitled.

Respectfully submitted,

TEXAS STATE TEACHERS ASSOCIATION
OFFICE OF THE GENERAL COUNSEL

By:

Kevin F. Lungwitz
Attorney-in-charge
State Bar No. 12698790
Southern Dist. No. 20529
316 West 12th Street
Austin, Texas  78701
512.476.5355, ext. 1145
512.486.7045 (fax)

Joey W. Moore
Of counsel
State Bar No. 24027523
Southern District No. 324957
316 West 12th Street
Austin, Texas  78701
512.476.5355, ext. 1145
512.486.7045 (fax)

ATTORNEYS FOR PLAINTIFFS

## XII.
## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiffs' Response to Defendant Brownsville Independent School District's Motion for Summary Judgment, Objections to Defendant's Summary Judgment Evidence, and Motion to Strike Defendant's Summary Judgment Evidence was served on the following via facsimile and CM/RRR on this the 15th day of August, 2006:

Miguel A. Saldana
Mark E. Sossi
Three North Park Plaza
Brownsville, Texas 78521
**Attorneys for Defendant**

Kevin F. Lungwitz
Joey Moore